UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

PETER AVOLETTA, ET AL.          :
                                :
        v.                      :      No. 3:07CV841(AHN)
                                :
CITY OF TORRINGTON, ET AL.      :

---

RULING ON PENDING MOTIONS

The plaintiffs, Joanne Avoletta ("Mrs. Avoletta") and her
two sons, Peter Avoletta ("Peter") and Matthew Avoletta
("Matthew"), bring this action asserting claims under (1) the
Connecticut Constitution, (2) the Individuals with Disabilities
Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485, as amended by
IDEIA, and Connecticut statutes and regulations, (3) Section 504
of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, (4)
the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101,
et seq., (5) the Civil Rights Act, 42 U.S.C. § 1983, as well as
state-law claims for (6) intentional spoilation of evidence, (7)
fraudulent concealment of evidence, and (8) negligent infliction
of emotional distress.

The defendants are the City of Torrington ("City"), the
Torrington Board of Education ("Board"), and the following
persons in both their individual and official capacities: Paul
Cavagnero, Chairman of the Torrington Board of Education, Dr.
Edward Kavle, the medical advisor for the Torrington public
schools, Veronica LeDuc, the Principal of the Torrington High

School, Judith Babcock, the Director of Student Services for the Torrington public schools, Dr. Joann Brogis, the former guidance counselor for the Torrington public schools, and David Bascetta, the director of facilities for the Torrington public schools.

Pending before the court are the defendants' motions to dismiss [docs. ## 45 & 46] pursuant to Fed. R. Civ. P. 12(b)(1) and (6). The defendants assert that the court does not have subject matter jurisdiction because the plaintiffs failed to exhaust their administrative remedies under the IDEA. The defendants also assert numerous grounds to dismiss the complaint for failure to state a claim on which relief may be granted. Also pending is the plaintiffs' motion to remand [doc. # 20].

For the following reasons, the motions to dismiss are GRANTED in part and DENIED in part and the motion to remand is also GRANTED in part and DENIED in part.

<u>FACTS</u>

The gist of the plaintiffs' claims is that the defendants failed to provide Peter and Matthew a free appropriate public education ("FAPE") in a safe school setting without discrimination due to disabilities that were caused by the defendants' failure to properly maintain the Torrington public school buildings. They assert that the defendants' negligent failure to properly maintain the middle school caused it to sustain water damage from leaks in the roof, mold and bacterial

growth, high levels of moisture in the indoor air, and poor circulation of air.  They contend that the defendants' negligent failure to properly maintain the high school resulted in asbestos problems, leaks in the roof and windows, minimal ventilation rates, and broken air handlers.  According to the plaintiffs, these conditions caused Peter to suffer irreversible lung disease and Matthew to suffer moderate to severe chronic allergies and asthma, thereby rendering both of them disabled and requiring special education services.  The defendants failed to provide those services and thereby deprived both children of their rights to a FAPE.

The plaintiffs allege that beginning with the 2003-2004 school year and continuing through the 2005-2006 school year, they repeatedly invoked their rights pursuant to the IDEA and Connecticut and federal statutes by requesting the defendants hold planning and placement team ("PPT") meetings for both children.  The defendants, however, refused some of their requests for PPT meetings, refused to identify both children as eligible under the IDEA for special education and related services due to their health impairments, and directed them to proceed under Section 504 rather than under the IDEA.

More specifically, Peter attended Torrington public schools from August 1999 through the end of the 2002-2003 school year.  After he was diagnosed in 2003 with irreversible lung disease,

his physician advised him to remain at home for the 2003-2004 school year. In August 2003 Mrs. Avoletta asked the Board to hold a PPT meeting to identify Peter under the IDEA as "other health impaired" and eligible for special services and she also requested a Section 504 meeting. The Board held meetings only under Section 504, not under the IDEA. In October 2003 the Board identified Peter as eligible for accommodations pursuant to Section 504 and provided him with homebound instruction for the 2003-2004 school year.

Mrs. Avoletta requested the Board place Peter in an out of district public or private school for the 2004-2005 school year. When the defendants refused, Mrs. Avoletta unilaterally placed him in a private high school in Waterbury, Connecticut.

From October 2003 to October 2005 the Board held numerous Section 504 meetings regarding Peter's education plan. Then, in October 2005 the Board denied the request to place Peter in an out of district school. In November 2005 Mrs. Avoletta requested a Section 504 due process hearing for Peter. The hearing was scheduled for April 2006, but it was cancelled by Mrs. Avoletta.

In addition, from November 2003 to May 2004 the Board held four PPT meetings regarding Peter's eligibility under the IDEA. The PPT process ended in May 2004 when the Board denied Mrs. Avoletta's request to identify Peter as eligible for special services under the IDEA.

During this time period Mrs. Avoletta unilaterally continued to send Peter to private school and the Board denied her repeated requests for reimbursement of his private school tuition and associated costs.  Peter graduated from that private high school in June 2006 and now attends college.

Matthew was 15 at the time this action was commenced.  He attended Torrington public schools from August 1997 to June 2003. In the spring of 2003 Mrs. Avoletta requested the Board hold a PPT meeting to identify him as other health impaired and requiring special services under the IDEA and Section 504.  The Board denied her request.  In August 2003, on the advice of Matthew's physician, Mrs. Avoletta notified the Board that she would not allow Matthew to attend Torrington Middle School and that she was placing him in a private school.  The Board then held the first of several Section 504 meetings to consider whether he was eligible for accommodations as a child with a disability.  After the Board determined that he was not eligible under Section 504, Mrs. Avoletta unilaterally placed him in a private school in Waterbury.  From that time until October 2005 the Board held seven additional Section 504 meetings, but it continued to find that Matthew was not eligible for accommodations under Section 504 and refused to place him in an out of district public or private school.

In November 2005 Mrs. Avoletta requested the defendants hold

a due process hearing under Section 504 for Matthew. The hearing was held and on April 3, 2006 the hearing officer found that he was not eligible for accommodations under Section 504.

During this same time period, Mrs. Avoletta also requested PPT meetings to have Matthew identified under the IDEA as other health impaired. The Board denied all but three of her requests for PPT meetings. The last PPT meeting was held in September 2004 at which time the Board refused to identify Matthew as eligible for special education under the IDEA and directed Mrs. Avoletta to pursue her rights under Section 504.

Mrs. Avoletta did not ask the defendants to place Matthew in an out of district school for the 2006-2007 school year or to identify him as eligible for special accommodations because doing so would have been futile.

Mrs. Avoletta continued to unilaterally send Matthew to private school. She requested the defendants reimburse her for Matthew's tuition and costs, but the defendants refused her requests.

In addition to pursuing these claims with the Board, in September 2004 Mrs. Avoletta filed a discrimination complaint against the defendants with the United States Office of Civil Rights, the agency responsible for enforcing Section 504 and the ADA, regarding Peter's treatment. In October 2005, the Office found that there was insufficient evidence to prove that the

Board had failed to comply with the requirements of Section 504 requiring special education and related services to meet Peter's needs.  The office declined Mrs. Avoletta's request to reconsider its decision in April 2006.

In March 2006 Mrs. Avoletta filed a discrimination complaint with the United States Office of Civil Rights regarding Matthew's treatment.  In July 2006 the Office determined that it was "unable to accept any of the complaint issues alleging discrimination on the basis of disability for investigation."

The plaintiffs allege that they exhausted their administrative remedies for Peter and Matthew pursuant to the IDEA and Section 504 for all relevant school years.

This action was filed in May 2007 in the Connecticut Superior Court and was removed by the defendants to this court.

STANDARD OF REVIEW

In cases such as this, where a Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction is combined with a Rule 12(b)(6) motion, the court must decide the jurisdictional question first because disposition of a Rule 12(b)(6) motion is a decision on the merits and thus an exercise of jurisdiction.  Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction); Magee v. Nassau County Med.

Ctr., 27 F. Supp 2d 154, 158 (E.D.N.Y. 1998).

To resolve disputed issues of fact relating to subject matter jurisdiction in a Rule 12(b)(1) motion, the court may consider evidence beyond the pleadings, including affidavits and other evidence submitted by the parties. Flores v. Southern Peru Copper Corp., 414 F.3d 233, 235 n.30 (2d Cir. 2003).

The plaintiff, as the party asserting subject matter jurisdiction, has the burden of establishing that it exists by a preponderance of the evidence. Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).

## DISCUSSION

The defendants move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the plaintiffs' claims under the Connecticut Constitution (count one), the IDEA and Connecticut statutes and regulations (count two), Section 504 (count three),[1] the ADA (count four),[2]

---

[1]Section 504 prohibits discrimination on the basis of a disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Under the federal regulations that implement Section 504, the denial of a FAPE to a disabled student can constitute disability discrimination. 34 C.F.R. § 104.33(a); J.D. ex rel. J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 70-71 (2d Cir. 2000). While Section 504 addresses, inter alia, discrimination against disabled students, the IDEA addresses inappropriate special education services. See S.W. v. Warren, 528 F. Supp 2d 282, 289 (S.D.N.Y. 2007).

[2]Title II of the ADA extends Section 504's prohibition against discrimination on the basis of disability to all programs and services provided by state and local governments. The enforcement provision of the ADA incorporates the enforcement provision of the Rehabilitation Act and both acts are interpreted uniformly. 28 C.F.R. § 35.103.

42 U.S.C. § 1983 (count five), as well as the claim for negligent infliction of emotional distress (count eight). They maintain that all of these claims relate to the alleged denial of Peter's and Matthew's right to a free appropriate public education and, as such, are subject to IDEA's exhaustion requirements. They claim that the plaintiffs' failure to exhaust the IDEA's administrative remedies deprives the court of subject matter jurisdiction.[3]

The defendants also move pursuant to Rule 12(b)(6) to dismiss the plaintiffs' claims on the grounds that they are barred by the doctrine of res judicata and assert numerous arguments supporting dismissal of all the claims, including the state-law claims, on grounds of, inter alia, sovereign and municipal immunity.

Because the defendants have raised the issue of the court's

---

[3]The plaintiffs contend that their claim for denial of a FAPE under the state constitution (count one) is not subject to exhaustion. However, it is well settled that a plaintiff cannot escape the IDEA's exhaustion requirement by artfully drafting a complaint avoiding the IDEA where the relief sought is available under the IDEA. E.g., Hope v. Cortines, 872 F. Supp. 14, 17 (E.D.N.Y. 1995), aff'd, 69 F.3d 687 (2d Cir. 1995); DiStiso v. Town of Wolcott, No. 3:05cv1910(PCD), 2006 WL 3355174, at *4 (D. Conn. Nov. 17, 2006). Moreover, it appears that a plaintiff does not have a private right of action under the Connecticut Constitution for injuries for which the legislature has provided a reasonably adequate statutory remedy. Kelley Prop. Dev. Inc, v. Town of Lebanon, 226 Conn. 314, 339 (1993). For this reason, the plaintiffs' claims under the Connecticut Constitution could not be sustained even if they had exhausted their administrative remedies under the IDEA.

subject matter jurisdiction, that issue must be decided first.

I.   Rule 12(b)(1) - Lack of Subject Matter Jurisdiction

The defendants maintain that the court does not have subject matter jurisdiction over the claims alleging denial of a FAPE because the plaintiffs did not exhaust the IDEA's administrative remedies.  The court agrees.

Under the IDEA, states that receive federal funds must provide disabled children a FAPE tailored to the unique needs of each particular child in the least restrictive appropriate environment.  20 U.S.C. §§ 1401(8), 1412(a); Polera v. Bd. of Educ. of Newburgh, 288 F.3d 478, 481 (2d Cir. 2002).  The IDEA gives parents of disabled children extensive procedural and substantive safeguards to ensure that their children receive a FAPE.  20 U.S.C. § 1415.  One of those safeguards is the requirement that the educational needs of a disabled child be set forth at least annually in an individualized education program ("IEP") developed by a Planning and Placement Team ("PPT") composed of, inter alia, parents, teachers, and school officials.  20 U.S.C. §§ 1414(d)(4)(A)(1) & (1)(B).  If a dispute arises between a school board and a parent as to a child's IEP, either party may request an impartial due process hearing conducted by the state educational agency.  20 U.S.C. § 1415(b)(6).  Thereafter, either party may bring a civil action in state or federal court for judicial review of the findings and decision of

the due process hearing.  20 U.S.C. § 1414(i)(2)(A).  But as the IDEA statute clearly states, before a party may file a civil action under the IDEA, the Constitution, the ADA, Section 504, or other laws protecting the rights of children with disabilities, the statutorily required impartial due process hearing "shall be exhausted."  20 U.S.C. § 1415(l).

To comply with the IDEA, Connecticut has enacted a series of statutes and regulations governing the provision of a FAPE to children who require special education and related services and the administrative process that must be followed.  Conn. Gen. Stat. § 10-76(a), et seq.; Conn. Agency Regs. § 10-76a-1, et seq. Under these statutes and regulations, the local board of education must accept and process a referral from, inter alia, a child's parent to determine a child's eligibility for special education and related services.  Each child who has been referred for such a determination must be evaluated by a PPT.  If the PPT determines that the child is eligible for special education and related services, the PPT must develop an IEP.  Parents who are not satisfied with the IEP may request, in writing, a hearing by an impartial hearing officer regarding the proposal or refusal to initiate or change the identification, evaluation, or educational placement of the child or the provision of a FAPE to the child. The hearing officer must issue written findings of fact and conclusions of law.  The decision may be appealed to federal or

state court.

Unless these administrative procedures are exhausted, an aggrieved parent may not seek redress in federal or state court to enforce any rights, procedures, and remedies available under, inter alia, the IDEA, the ADA, Section 504, and 42 U.S.C. § 1983, even though these statutes do not have an exhaustion requirement for claims unrelated to the IDEA. E.g., J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 112 (2d Cir. 2004); Polera, 288 F.3d at 480. As the Second Circuit explained, the IDEA's exhaustion requirement "was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances," "prevents courts from undermining the administrative process," and "permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." Polera, 288 F.3d at 487 (quoting Heldman ex rel. T.H. v. Sobol, 962 F.2d 148, 159 (2d Cir. 1992)).

A.  The Administrative Process in this Case

The defendants assert that the plaintiffs never requested a due process hearing as required by the IDEA for either Matthew or Peter regarding their eligibility determinations, evaluations, out of district placement, or the alleged failure to provide a FAPE. The plaintiffs do not dispute this assertion, but claim that they exhausted their IDEA administrative remedies "to the

fullest extent possible before the defendants directed [them] to proceed under Section 504 and [they] pursued their Section 504 remedies to the conclusion of a due process hearing prior to seeking redress in court." According to the plaintiffs, the administrative process through which they asserted their rights under Section 504 satisfies the IDEA's exhaustion requirements, especially because the defendants directed them to proceed under Section 504. They also claim that their efforts to obtain redress by filing complaints with the Connecticut Office of Protection & Advocacy for Disabled Persons and the United States Office of Civil Rights also satisfies IDEA's exhaustion requirements. The court disagrees.

As noted, there is no dispute that Mrs. Avoletta never requested due process hearings under the IDEA for either Peter or Matthew: she did not request an IDEA due process hearing after the defendants refused her numerous requests to conduct PPT meetings to identify Peter and Matthew as other health impaired and eligible for special education under the IDEA; nor did she request an IDEA due process hearing after the defendants eventually held PPT meetings for Peter and Matthew, but determined that they were not disabled under the IDEA and not eligible for special services. Because she never requested a due process hearing under the IDEA to challenge any of the defendants' actions or determinations, she did not exhaust the

IDEA's administrative remedies.

Moreover, Mrs. Avoletta's failure to request due process hearings is not excused by her efforts to obtain accommodations for Peter and Matthew under Section 504, or by requesting Section 504 "due process hearings" to challenge the defendants' determination that Peter and Matthew were not disabled, or by participating in one Section 504 "due process hearing" for Matthew. And her failure to request due process hearings under the IDEA is also not excused by the complaints she filed with the Connecticut educational agencies and the United States Office of Civil Rights against the City and Board alleging discrimination under Section 504.

It is the exhaustion of the IDEA's administrative procedures, not procedures under Section 504, that is the prerequisite for bringing an action in federal or state court alleging the denial of a FAPE under the IDEA, Section 504, the ADA, Section 1983, or any other cause of action. Myslow v. New Milford Sch. Dist., 3:03cv496(MRK), 2006 WL 473735, at *10 n.2 (D. Conn. Feb. 28, 2006); 20 U.S.C. § 1415(l).

Indeed, the plain language of the IDEA and Second Circuit case law dictate that IDEA exhaustion is required whenever a plaintiff seeks relief under any federal or state law if the relief sought is the same as the relief that would be available under the IDEA. 20 U.S.C. § 1415(l); Polera, 288 F.3d at 483;

-14-

Hope v. Cortines, 872 F. Supp. at 21.  Thus, because the relief
the plaintiffs seek under Section 504, the ADA, the Connecticut
Constitution and statutes, and Section 1983, is relief that is
also available under the IDEA, they were required to exhaust
their administrative remedies under the IDEA even though the
other causes of action do not require exhaustion for claims
unrelated to the IDEA.  See Polera, 288 F.3d at 488.

The plaintiffs' failure to comply with the IDEA's due
process requirement not only deprived the defendants of an
opportunity in the first instance to correct and remedy any
shortcomings in the educational programs for Peter and Matthew
and prevented the full exploration of technical and other issues
by educational experts, it also deprived this court of the
considered opinions and factual findings of educational experts
as well as an administrative record, all of which the court would
need to review and consider when determining whether the
plaintiffs' rights were violated.  See Polera, 288 F.3d at 486-88
(quoting Heldman ex rel. v. Sobol, 962 F.2d 148, 159 (2d Cir.
1992)); Garro v. State of Conn., 23 F.3d 734, 738 (2d Cir. 1994).
It stands to reason that because the IDEA and Section 504 address
different injuries and require different proof, J.D. ex rel. J.D.
v. Pawlet Sch. Dist., 224 F.3d 60, 70 (2d Cir. 2000) (citing
Monahan v. State of Nebraska, 687 F.2d 1164, 1170-71 (8th Cir.
1982)) (noting that a court's conclusion that an incorrect

-15-

evaluation was made and a different placement was required under the IDEA is not the same as a conclusion that a disabled child, either because of bad faith or gross misjudgment, was discriminated against solely by reason of his disability in violation of Section 504), an administrative record of a Section 504 proceeding would not provide an adequate record for the court to review in determining whether the defendants incorrectly evaluated Peter and Matthew and denied them a FAPE.

In sum, because the plaintiffs failed to request due process hearings as required by IDEA, they did not exhaust their administrative remedies.

B.  Futility

The plaintiffs' claim that it would have been futile for them to seek relief through the IDEA administrative process is without merit.  Although the plaintiffs correctly assert that the failure to exhaust the IDEA's administrative remedies may be excused where doing so would have been futile, e.g., Hope v. Cortines, 872 F. Supp. at 22, futility means more than a failure to provide services.  Polera, 288 F.3d at 409.

To show futility, a plaintiff must demonstrate that "adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." J.G. v. Bd. of Educ. of Rochester City Sch. Dist., 830 F.2d 444, 447 (2d Cir.

1987).  In other words, the exhaustion requirement is excused by the futility doctrine in cases where pursuing the IDEA's administrative process would leave the party without an adequate remedy.  Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d 198, 205 (2d Cir. 2007).  An adequate remedy means relief for "the events, conditions, or consequences of which the person complains, [even if] not necessarily relief of the kind the person prefers."  Polera, 288 F.3d at 488.  Thus, if the IDEA administrative process offers a remedy, even if not the preferred remedy, for the ills of which a plaintiff complains, the plaintiff may not ignore the administrative process then later sue under a different statute or theory.  Id. at 483.  The burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement.  Id. at 489 n.8.

Here, unlike cases where the Second Circuit has held that the futility exception is applicable, this case does not involve systemic violations that were not directed at any individual child, nor is it one in which a hearing officer was powerless to correct the alleged violations.  See J.S. ex rel N.S. v. Attica Cent. Schs., 386 F.3d at 113 (citing numerous cases where exhaustion was futile in that the "problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and

volume of complaints were incapable of correction by the administrative hearing process").

To the contrary, the dispute here -- the defendants' refusal to identify Peter and Matthew as disabled and to provide them with special education services -- is precisely the kind of dispute to which the IDEA's administrative scheme is addressed and is one that a due process hearing officer had the power to remedy by providing the relief sought -- out of district placement -- if the hearing officer determined that the children were eligible for such placement.

The fact that the plaintiffs believed that the relief they sought was not likely to be awarded at the administrative level does not mean that resort to the IDEA's administrative procedures would have been futile. As the Second Circuit has noted, the futility exception does not apply where a plaintiff merely chooses not to pursue the remedies that were available at the administrative level. Polera, 288 F.3d at 490. Disabled students "should not be permitted to 'sit on' live claims and spurn the administrative processes that could provide the educational services they seek, then later sue for damages." Id. Condoning such conduct would frustrate the IDEA's carefully crafted process for the prompt resolution of grievances. . . ." Id.

Thus, where, as here, there was a fully effective

administrative remedy available, but was not pursued, the futility exception does not apply.  Id.

C.  Waiver

There is also no merit to the plaintiffs' conclusory assertion that the defendants' conduct in continuously rejecting the plaintiffs' efforts to proceed under the IDEA and directing them to proceed under Section 504 constituted a waiver of the exhaustion requirement.  Even assuming that the plaintiffs had sustained their burden of providing evidence to support a waiver, this defense has not been recognized in the Second Circuit.

While the Seventh Circuit has held that failure to exhaust under the IDEA is not a jurisdictional bar, but is only an affirmative defense that is subject to waiver, Mosely v. Bd. of Educ. of City of Chicago, 434 F.3d 527, 532-33 (7th Cir. 2006), the Second Circuit has "yet to reach a clear conclusion on this question."  Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 444 n.2 (2d Cir. 2006).  In fact, in Paese and more recently in Coleman v. Newburgh Enlarged City School District, 503 F.3d 198 (2d Cir. 2007), the Second Circuit acknowledged that it has routinely held that the IDEA's exhaustion requirement is a jurisdictional but, while it has also referred to the IDEA's exhaustion requirement as a "non-exhaustion defense," it has never decided whether the IDEA's exhaustion requirement was subject to waiver.  Paese, 449 F.3d at 444 n.2; Coleman, 503 F.3d

at 203-04.  Nonetheless, the court in <u>Coleman</u>, as it did in
<u>Paese</u>, concluded once again that it did not need to decide the
issue because a waiver defense was not tenable in the case before
it.  503 F.3d at 203-04; <u>see also</u> <u>Handberry v. Thompson</u>, 446 F.3d
52, 60 (2d Cir. 2006) (on rehearing) (noting that it had not yet
ruled on whether the IDEA's exhaustion requirement is subject to
waiver, but noting its holding that "absent an applicable
exception, a plaintiffs' failure to exhaust IDEA's administrative
remedies deprived the court of subject matter jurisdiction").

Until the Second Circuit rules otherwise, the law in this
circuit is that failure to exhaust is a jurisdictional bar, not
an affirmative defense that is subject to waiver.  Accordingly,
the plaintiffs' waiver claim is unavailing.

Because the plaintiffs did not pursue or exhaust the
administrative remedies required by the IDEA and because there is
no applicable exception to the exhaustion requirement, this court
does not have subject matter jurisdiction to rule on the
appropriateness of the Board's decision that Peter and Matthew
were not disabled and were not entitled to placement in an out of
district school.  <u>See</u>, <u>e.g.</u>, <u>Handberry v. Thompson</u>, 446 F.3d at
60.

Accordingly, the defendants' Rule 12(b)(1) motions to
dismiss the plaintiffs' claims under the Connecticut
Constitution, Connecticut statutes and regulations, the IDEA, the

ADA, Section 504, 42 U.S.C. § 1983, and for negligent infliction of emotional distress[4] as asserted in counts one, two, three, four and eight of the complaint, are granted.

## II.  Rule 12(b)(6) Motion to Dismiss

The defendants have also asserted numerous grounds to dismiss the plaintiffs' state-law claims under Rule 12(b)(6). Although the court has supplemental jurisdiction over these remaining claims under 28 U.S.C. 1367, the court, as discussed infra, declines to exercise that jurisdiction now that the plaintiffs' federal claims have been dismissed.

Accordingly, the court will not consider or decide the defendants' claims in support of their Rule 12(b)(6) motion to dismiss and denies this portion of the motion without prejudice.

## III. Motion to Remand

The plaintiffs have moved pursuant to 28 U.S.C. § 1447 to remand this case to the Connecticut Superior Court.  They assert that this court lacks subject matter jurisdiction over their state constitutional claims because they raise novel and complex

_____

[4]The negligent infliction of emotional distress claim asserted in count eight is nothing more than a reformulation of the plaintiffs' statutory claims (i.e., the plaintiffs allege that the defendants "negligently inflicted emotional distress on the plaintiffs by failing to provide a free appropriate public education to Peter and Matthew in a safe school setting without discrimination against them due to their disabilities during all relevant years") and thus is also subject to the IDEA's exhaustion requirement.  See DiStiso v. Town of Wolcott, 2006 WL 3355174, at * 4; 20 U.S.C. § 1415(l).

issues of state law and they substantially predominate over the
federal claims.  There is no merit to this assertion.

By virtue of the four federal causes of action alleged in
the complaint, i.e., the IDEA, Section 504, the ADA, and 42
U.S.C. § 1983, this court has original jurisdiction pursuant to
28 U.S.C. §§ 1331 and 1343(a)(3) and the action was properly
removed under 28 U.S.C. § 1441(a).  Accordingly, remand is not
authorized under 28 U.S.C. § 1447.  Indeed, because this court
has original jurisdiction over the federal claims, it has no
discretion to remand them.  Nelson v. City of Rochester, 492 F.
Supp 2d 282, 286 (W.D.N.Y. 2007) (citing Green v. Ameritrade,
Inc., 279 F.3d 590, 596 (8th Cir. 2002)); see also 16 Moore's
Federal Practice § 107.14[6][b].  Further, it would not be
appropriate to remand the state-law claims even if the plaintiffs
had moved under 28 U.S.C. § 1441(c) because those claims are not
separate and independent from the federal claims.  See Hinson v.
Norwest Fin. S.C., Inc., 239 F.3d 611, 616 (4th Cir. 2001)
(holding that where the state and federal claims are not separate
and independent from each other, § 1441(c) simply has no bearing
on the issue of remand).  In fact, the federal and state-law
claims alleged in the complaint arise out of the same facts so
the court has supplemental jurisdiction over the state-law claims
under 28 U.S.C. § 1367 and removal of the entire action was
proper.  Nelson v. City of Rochester, 492 F. Supp 2d at 286.

Thus, the plaintiffs' motion to remand the action is denied.

Nonetheless, to the extent the plaintiffs' motion can be construed as asking the court to decline supplemental jurisdiction and remand the state-law claims, the motion is granted. In fact, because the court has dismissed all claims over which it had original jurisdiction, it must reassess its jurisdiction. Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that 'if [all] federal claims are dismissed before trial ... the state claims should be dismissed as well.'") (quoting Castellano v. Bd. of Trustees, 937 F.2d 752, 758 (2d Cir. 1991)).

When all of a plaintiffs' federal claims have been dismissed, a district court can decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c) if it determines that exercising supplemental jurisdiction would not promote economy, convenience, fairness, and comity. Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446 (2d Cir. 1998). In this case, permitting the parties to litigate the remaining state-law claims in this court now that all the federal claims have been dismissed would not promote economy, convenience, fairness, and comity. Indeed, doing so would amount to what has been described as "allowing a federal tail to wag what is in substance a state dog." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 787 (3d Cir. 1995).

Moreover, the interests of federalism and comity favor litigating the state-law issues, especially those involving sovereign and municipal immunity, in state court.  See <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 306 (2d Cir. 2003); <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Accordingly, the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) and remands the remaining state-law claims to the Connecticut Superior Court.

<u>CONCLUSION</u>

For the foregoing reasons, the defendants' motions to dismiss [docs. ## 45 & 46] are GRANTED in part and DENIED in part.  In so far as the motions seek to dismiss the plaintiffs' claims under the Connecticut Constitution and statutes, the IDEA, Section 504, the ADA, and for negligent infliction of emotional distress pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, the motion is GRANTED.  In so far as the motions seek dismissal of the remaining state-law claims pursuant to Fed. R. Civ. P. 12(b)(6), the motion is denied without prejudice.

The plaintiffs' motion to remand [doc. # 20] is DENIED in part and GRANTED in part in so far as it asks the court to decline supplemental jurisdiction and to remand the remaining

-24-

state-law claims to state court.

Accordingly, counts one, two, three, four, five, and eight of the complaint are dismissed.  The Clerk is directed to remand this action to the Connecticut Superior Court from which it was removed.

SO ORDERED this <u>31st</u> day of March, 2008 at Bridgeport, Connecticut.

/s/_____
              Alan H. Nevas
        United States District Judge